NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

AUG 12 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| KEVIN DUDEN,<br><br>     Plaintiff - Appellant,<br><br>  v.<br><br>STATE OF WASHINGTON;<br>WASHINGTON DEPARTMENT OF<br>CORRECTIONS; JOHN AND JANE DOE,<br>1-10; MONROE CORRECTIONAL<br>COMPLEX - WASHINGTON STATE<br>REFORMATORY UNIT,<br><br>     Defendants - Appellees. | No. 25-724<br><br>D.C. No.<br>4:23-cv-05047-SAB<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Eastern District of Washington
Stanley Allen Bastian, District Judge, Presiding

Argued and Submitted June 8, 2026
Seattle, Washington

Before:     HAWKINS, W. FLETCHER, and TUNG, Circuit Judges.
Dissent by Judge TUNG.

     Kevin Duden appeals the grant of summary judgment in favor of defendants,

including his former employer the Washington Department of Corrections ("DOC"),

---

     [*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

on his failure-to-accommodate claims under Title VII, 42 U.S.C. § 2000e et seq., and the Washington Law Against Discrimination ("WLAD"). We have jurisdiction under 28 U.S.C. § 1291, and we review de novo the district court's grant of summary judgment, *Zetwick v. County of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017). We affirm.

The district court correctly concluded that accommodating Duden would impose undue hardship on DOC. The undue hardship analysis "takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of [an] employer." *Groff v. DeJoy*, 600 U.S. 447, 470–71 (2023) (alteration in original).[1] Ultimately, the employer must show that the "burden is substantial in the overall context of [its] business." *Id.* at 468.

Duden contends that DOC could have accommodated him by allowing him to work remotely or with masking, testing, and social distancing protocols. But the undisputed evidence shows that thirty percent of Duden's job required in-person instruction of Department of Corrections Aggression Replacement Training ("DOCART") classes to inmates in a high-security prison. In a typical class, Duden would instruct students on certain social skills, and then students would role-play situations in which they could implement those skills. Duden would pause, critique,

---

[1] Washington courts follow Title VII case law for WLAD claims as well. *Kumar v. Gate Gourmet, Inc.*, 325 P.3d 193, 197 (Wash. 2014).

and correct the inmates' behavior. There was no internet in the classrooms as the prison does not allow groups of inmates to have unsupervised access to the internet. Another significant percentage of his work involved administrative tasks associated with the in-person instruction of DOCART classes. DOC would need to hire or reassign someone else to take over the in-person instruction, along with the associated administrative tasks, if Duden worked remotely. And DOC received approximately 600 requests for religious exemptions under the vaccine mandate. Duden did not rebut this evidence.

Nor did he rebut DOC's evidence that, despite masking, testing, and social distancing protocols, COVID-19 infection rates among staff increased significantly in the months leading up to the vaccine mandate, and four employees died after exposure to COVID-19 in the workplace. The regulations and article on which Duden relies do not create a genuine dispute of fact, as they also indicate that vaccination was viewed as the means most likely to reduce transmission of COVID-19.

Duden primarily argues that DOC failed to carry its burden because it did not produce financial cost data. However, as our court has recently clarified in similar cases, the burdens taken into account in the undue hardship analysis are not "exclusively monetary." *Williams v. Legacy Health*, 174 F.4th 1201, 1206 (9th Cir. 2026) (citing *Groff*, 600 U.S. at 469). Here, DOC relied on "health and safety costs"

3                    25-724

and "operational burdens," and thus, its failure to provide financial cost data did not preclude a finding of undue hardship. *See id.* at 1206–07 (affirming finding of undue hardship as a matter of law where defendant did not argue that accommodation would "cause prohibitive financial hardship" and instead relied only on health and safety risks and operational burdens); *see also Petersen v. Snohomish Reg'l Fire & Rescue*, 150 F.4th 1211, 1220 (9th Cir. 2025) (affirming finding of undue hardship as a matter of law based, in part, on health and safety costs and operational burden, which took into account number of requested exemptions from COVID-19 vaccination policy).

For the first time in his reply brief on appeal and without citing to anything in the record, Duden argues that the district court erred by not considering evidence regarding DOC's vaccination policies for inmates, vendors, and visitors. Duden failed to make this argument before the district court or in his opening brief, so we do not consider it. *See Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990) ("[A]ppellants cannot raise a new issue for the first time in their reply briefs." (internal quotation marks and citation omitted)).

Because the district court correctly concluded that the undisputed evidence established undue hardship, we need not consider the parties' remaining arguments regarding good faith effort to accommodate. *See Williams*, 174 F.4th at 1207 ("'[U]ndue hardship' serves as a complete defense to a Title VII claim even if there

was 'no attempt at accommodation' at all." (quoting *E.E.O.C. v. Townley Eng'g &*

*Mfg. Co.*, 859 F.2d 610, 615 n.7 (9th Cir. 1988))).

**AFFIRMED.**

*Duden v. Washington Dep't of Corrections, et al.*, Case No. 25-724

TUNG, Circuit Judge, dissenting:

The panel today misapplies the standard set forth by the Supreme Court in *Groff v. DeJoy*, 600 U.S. 447 (2023), in denying an employee his right to a religious accommodation under Title VII. I respectfully dissent.

Title VII of the Civil Rights Act of 1964 "requires employers to accommodate the religious practice of their employees unless doing so would impose an 'undue hardship on the conduct of the employer's business.'" *Id.* at 453–54 (quoting 42 U.S.C. § 2000e(j)).

Here, the State of Washington refused to provide any accommodation for one of its employees (Kevin Duden) who worked in a state prison and objected to taking the COVID vaccine on the grounds that the vaccine was derived from the use of fetal cells from aborted children. Duden contended that the State's requirement that he take the vaccine violated his Christian beliefs.

The panel granted summary judgment to the State, concluding that the State had shown that accommodating its employee would impose an "undue hardship." The panel so concluded, even though the State admittedly provided *no data* showing what costs an accommodation would cause the State to incur or whether its asserted costs would be substantial in relation to its operations.

1

That was clear error. "Undue hardship" requires a *showing* by the State "that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Id.* at 470. The State's burden cannot be met merely by making generalized assertions of cost. Courts "must apply the test in a manner that takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating costs of [an] employer." *Id.* at 470–71 (internal quotation marks omitted). Moreover, Title VII "requires that an employer reasonably accommodate an employee's practice of religion, not merely that it assess the reasonableness of a particular possible accommodation or accommodations." *Id.* at 473. Thus, "it would not be enough for an employer to conclude that forcing other employees to work overtime would constitute an undue hardship." *Id.* "Consideration of other options, such as voluntary shift swapping, would also be necessary." *Id.*; *see also id.* at 471 ("[T]oday's clarification may prompt little, if any, change in the agency's guidance explaining why no undue hardship is imposed by temporary costs, voluntary shift swapping, occasional shift swapping, or administrative costs.").

The State came nowhere close to meeting that test. The State conceded that it provided no data or analysis regarding the costs that accommodating Duden would impose. *See* Answering Br. at 42; Oral Arg. at 13:35–15:03. For example, the State

2

provided no information about the cost or burden of permitting Duden to work virtually or remotely. Duden helped run a program at the prison—called "aggression replacement training" (or more colloquially, anger-management training)—that sought to reduce recidivism. ER 55. Much of his job, he said, was desk work already and could be done remotely. *Id.* And while he had also taught class in-person, Duden claimed that this could have been done virtually as well (as purportedly other similar programs had done). ER 56. The State's failure to explain what cost or administrative burden Duden's proposed accommodation would impose should have precluded summary judgment for the State.

The State cannot fix this deficiency by generally asserting that Duden was "required" to be at the prison in-person because it was an "essential" part of his job. Op. at 2; Answering Br. at 25–26. Blanket declarations of what features of a job are "required" or "essential" cannot replace the State's burden to show that an accommodation would impose an "undue hardship" under Title VII. The very point of an "accommodation" is to allow alterations of the features of a job that would render a person's employment compatible with his religious beliefs without imposing an undue hardship. The term "essential" that the State relies on comes from a different statutory scheme (the Americans with Disabilities Act) in which "consideration shall be given to the employer's judgment as to what functions of a

3

job are essential," *see* 42 U.S.C. § 12111(8). But that language simply does not exist in Title VII.

Even assuming the State's claim that Duden's in-person presence was required, the State still would not be entitled to summary judgment. The State provided no information about how costly or burdensome it would be for the State to find a replacement for Duden's in-person assignments. For example, the State provided no cost information about hiring someone to replace him. Nor did the State address whether a current employee could have swapped shifts with Duden. Those options needed to be considered, as *Groff* mandates, but the State failed to address those options—let alone provide any information about what burdens such options would have generated in relation to the State's overall business (*i.e.*, operating a prison), and whether such burdens would have been substantial.

For its part, the panel concedes that the State provided no cost data. But the panel excuses this defect by contending that the State did not need to provide data that are "exclusively monetary." The State, the panel said, could invoke "health and safety costs" and "operational burdens" to show an "undue hardship," citing *Williams v. Legacy Health*, 174 F.4th 1201 (9th Cir. 2026), and *Petersen v. Snohomish Reg'l Fire & Rescue*, 150 F.4th 1211 (9th Cir. 2025). Op. at 3–4. But Duden's proposed accommodation of remote work would eliminate any "health and safety costs," since he would not be exposed to others, or be exposing others, in the

4

workplace. We are left, then, with the question whether the State showed "operational burdens" that would warrant summary judgment in its favor.

The answer is no. Once again, Duden stated that any operational burdens would be minimal due to the nature of his work, which could have been performed remotely. ER 55. Now, of course the State argued that his in-person presence was "essential," but again, that is an ADA standard; it is not a magic word that the State could invoke to avoid liability under Title VII. Even putting aside the State's (and the panel's) conflation of the statutory standards, Duden has raised a material issue of fact (whether remote work would impose operational burdens and how substantial those burdens might be) that should have precluded summary judgment.

*Williams* and *Petersen* are easily distinguishable too. Those cases involved nurses and firefighters, respectively, who could not work remotely without imposing a real operational cost on the employers. Here, we have an administrator and classroom instructor who could offer his services remotely. Moreover, the "health and safety costs" in *Williams* and *Petersen* were supported by testimony from experts qualified to opine on such matters related to the risks of remaining unvaccinated in a particular workplace. No such testimony was provided here.

There is another key point that precludes summary judgment. Any assessment of the "health and safety costs" incurred by Duden's failure to vaccinate must account for the fact that the prisoners at the facility were *not* required to vaccinate.

5

If a large population of the facility was not required to vaccinate—as the State admitted, *see* Oral Arg. at 20:41–20:58—then it is difficult for the State to justify mandated vaccinations for a much smaller population of employees on the grounds that failure to do so would result in "substantial *increased* costs." *Groff*, 600 U.S. at 470 (emphasis added). For all we know, the infections and four deaths that the State cites were attributable, not to the employees, but to the prisoners' failure to vaccinate and the lack of a requirement that they vaccinate.[1]

Finally, the State cannot prevail on summary judgment when it failed to provide any information about "the nature, size[,] and operating costs" of its operations. *Id.* at 470–71 (internal quotation marks omitted). Absent this information, it would be impossible to determine whether any "increased costs" would be substantial "*in relation to*" the conduct of the employer's business—and thus whether such costs would cause an "undue hardship" to the employer, or whether the employer could safely absorb such costs. *Id.* at 470 (emphasis added). Hence, the State's assertion that it received about 600 requests for religious exemptions is not terribly meaningful. It would be like asking whether $1,000

---

[1] The panel asserts that Duden did not raise until his Reply Brief the issue of vaccinating inmates and other individuals, and so the panel does not consider this argument. Op. at 4. But here, the State expressly *conceded* the factual point that prisoners were not required to vaccinate. Nor did the State raise the issue of any waiver by Duden, and so the State has "waived" any waiver argument. *United States v. Doe*, 53 F.3d 1081, 1082–83 (9th Cir. 1995). In such a circumstance, we are free to factor in this undisputed fact in the summary-judgment analysis.

6

constitutes a substantial portion of one's bank account without knowing how much the bank account contained in total. In other words, we would not know how large a fraction is if we did not have any information about the denominator. So too here— a court cannot assess whether costs (monetary or otherwise) would impose an "undue hardship" if it has no information about the nature, size, and operating costs of the State's correctional facility.

For all these reasons, we should have reversed the district court's grant of summary judgment to the State. I respectfully dissent.